IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

APRIL JACKSON,

        Plaintiff,

V.                                                      CIVIL ACTION NO. 3:06-0299

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM ORDER**

        In this action, filed under the provisions of 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff filed her application on December 2, 2003, alleging disability commencing June 13, 2002, as a consequence of bilateral carpal tunnel syndrome, thoracic outlet syndrome, ulnar neuropathy and epicondylitis. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

        At the time of the administrative decision, plaintiff was forty years of age and had obtained a high school education and three years of college. Her past relevant employment experience

consisted of work as an administrative assistant. In his decision, the administrative law judge found that plaintiff suffered from "myofascial pain syndrome, degenerative cervical and lumbar disc disease, history of thoracic syndrome, and bilateral cubital tunnel syndrome, epicondylitis, ulnar neuropathy, and tendonitis," impairments which he considered severe. Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge determined that she had the residual functional capacity for a limited range of sedentary level work. On the basis of this finding, and relying on Rule 201.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. The medical evidence reflects plaintiff was in a motor vehicle accident on June 13, 2002, her alleged onset date, and since has been treated for cervical spine strain/sprain, cervical radiculopathy, degenerative joint disease and degenerative disc disease, thoracic outlet syndrome (TOS),[3] cubital tunnel syndrome,[4] and bilateral epicondylitis.[5] Treatment, consisting

---

[1]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

[3]This condition is caused by a compression of the nerves of the brachial plexis and the subclavian artery by muscles in the region of the first rib and the clavicle (collarbone). It is marked by pain in the arm and paresthesia (an abnormal sensation of tingling, burning or crawling) in the fingers, vasomotor symptoms and wasting of the small muscles of the hand. Attorney's Dictionary of Medicine, T-103-104 (2007).

[4]The condition resulting from a compression or injury of the ulnar nerve at the elbow. It is marked by pain and numbness of the forearm and hand. Id. at C-516.

[5]Inflammation of the epicondyle, the protuberance of bone near the end of a long bone such as the humerus, the bone of the upper arm. Id. E-139-140.

mostly of pain management, was provided by Dr. Philip Fisher, who began seeing plaintiff on July 3, 2002. Modalities used were orthopedic cementing of the first rib on each side to try and hold them in place; epidural steroid injections in the cervical spine; injections into the elbows bilaterally; trigger point injections; physical therapy, use of braces and splints on the elbows, wrists and shoulder; medication; and massage therapy. A Functional Capacity Evaluation performed June 3, 2004 revealed plaintiff was capable of sedentary level activity, although the administering therapist noted some uncertainty as to whether plaintiff could "safely and dependably" perform at this level given her statements as to her pain levels during testing. The administrative law judge determined that the credibility of those complaints was only fair, however.

     Plaintiff testified at the June 7, 2005 hearing that she could drive at least thirty to thirty-five minutes without difficulty but that anything repetitious caused her increased pain. She experiences a loss of strength with raising her arms above shoulder level. She spends her time during the day in constant movement, mainly walking, since she cannot sit or stand for prolonged periods. She tries to do some housework as well as child care and estimated she could vacuum for ten to fifteen minutes at a time. She sews as a hobby and occasionally goes to church, although she alleged an inability to sit through services. Plaintiff also asserted she experiences fifteen to eighteen migraine headaches per month; however, the administrative law judge did not find this to be a severe impairment as the evidence did not establish significant complaints or treatment for this condition.

     The administrative law judge, indicating his reliance on the June 2004 Functional Capacity Evaluation, assessed plaintiff as capable of sedentary level work requiring no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling and allowing for a sit/stand option at one-half hour intervals. He also found she should not work in temperature extremes, at heights,

around dangerous machinery or be subjected to vibration. Given ongoing problems with plaintiff's arms and hands, the administrative law judge also found she could only occasionally perform fine manipulation.

Plaintiff alleges the administrative law judge did not properly consider her pain and made a faulty credibility assessment. The administrative law judge determined that the evidence established the presence of "medically determinable impairments" and that those impairments "could reasonably be expected to produce" the pain alleged by plaintiff.[6] The intensity and persistence of plaintiff's symptoms were then considered, and the administrative law judge came to the conclusion that plaintiff's pain was not so severe as to prevent her from performing a very limited range of work.[7] He observed that physical therapy notes documented "significant" progress with cervical range of motion and strength and upper extremity strength as well as costovertebral joint stability by August 2002 with subsequent notes reflecting additional progress. He also noted that Dr. Fisher reported plaintiff's symptoms responded relatively well to manual pain relief modalities. The administrative law judge also noted that plaintiff had not been seen for pain management for almost one year as of the time of the hearing and that the most recent report from Dr. Fisher reflected he did not need to see her for another six months.[8] After the date of this appointment, the administrative law judge observed that plaintiff was seen two more times by Dr. Ayers, her primary care physician. At both of these visits, Dr. Ayers observed plaintiff was in "no acute distress." On February 22,

---

[6] See 20 C.F.R. § 404.1529(b); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

[7] 20 C.F.R. § 404.1529(c); Craig v. Chater, 76 F.3d at 595.

[8] It is also noted that this appointment, on September 29, 2004, was exactly six months after the prior appointment of March 29, 2004 when Dr. Fisher concluded plaintiff had reached "Maximum Medical Improvement" for workers' compensation purposes.

2005, he also observed that plaintiff "look[ed] well," and on November 5, 2004, he noted she could move around without pain or tenderness.

The administrative law judge pointed out that plaintiff, per her reports, was able to care for her three-year-old daughter by herself during the day, drive independently, and perform volunteer work two hours a day.[9]

The administrative law judge clearly found plaintiff had pain which would preclude her from performing all but a limited range of sedentary level work. In narrowing the range of sedentary work she could perform, the administrative law judge took account of her impairments and the credible limitations established by the evidence. In view of that evidence, and giving consideration to the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," it is apparent that these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

While plaintiff claims the administrative law judge did not consider her impairments in combination, she cites to nothing specific, and the record reveals that the administrative law judge considered all of the medical evidence and specifically noted his consideration of "all medically determinable impairments, including any impairments that are 'severe' or 'non-severe'" in finding that plaintiff did not meet or medically equal any listed impairment.[10] It is apparent that he considered all of her impairments in formulating his residual functional capacity findings and in

---

[9]The administrative law judge is referring to plaintiff's testimony that she went to her daughter's school and helped with a book fair for two hours.

[10]See, Tr. at 14.

5

questioning the vocational expert. The Court thus finds plaintiff's argument in this regard has no merit.

Finally, plaintiff alleges the administrative law judge did not properly resolve conflicts in the evidence. From its review of his decision and the evidence of record, however, it is apparent that the administrative law judge did consider all of the evidence, which is not significantly conflicting. Plaintiff's testimony creates the only conflict, and the administrative law judge resolved this in making his credibility findings. "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). In this case, the administrative law judge's findings of fact and resolution of conflicts are clearly supported by substantial evidence and must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: April 8, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE